FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 18, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VIOLETTE B. o/b/o COREY B. (deceased),<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:17-CV-03218-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 20. Attorney D. James Tree represents Violette B. who is appearing on behalf of the deceased claimant, Corey B., (Plaintiff); Special Assistant United States Attorney Catherine Escobar represents the Commissioner of Social Security (Defendant). The parties consented to proceeding before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Corey B. filed applications for Supplemental Security Income (SSI) and

ORDER GRANTING PLAINTIFF'S MOTION - 1

Disability Insurance Benefits (DIB) on November 20, 2014, Tr. 70-71, 208, alleging disability since April 24, 2014, Tr. 211, 218, due to bad disc nerve damage in the lumbar 4 and 5, bad sciatica, bipolar disorder, and depression. Tr. 237. The applications were denied initially and upon reconsideration. Tr. 124-27, 132-53. Administrative Law Judge (ALJ) Gordon W. Griggs held a hearing on January 17, 2017 and heard testimony from Corey B. and vocational expert Leta Rae Berkshire. Tr. 33-69. The ALJ issued an unfavorable decision on March 17, 2017. Tr. 15-25. The Appeals Council denied review on October 18, 2017. Tr. 1-6. The ALJ's March 9, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Corey B. initiated this action for judicial review on December 22, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Corey B. was 27 years old at the alleged date of onset. Tr. 211. He completed high school and received his CDL through Job Corps. Tr. 238. His reported work history included driving forklift, sorting produce, providing security, driving truck, stocking a warehouse, working in a lumber yard, and working in fast food. Tr. 238, 252-61. When applying for benefits he reported that he stopped working on April 24, 2014 because of his conditions. Tr. 237.

Corey B. passed away on April 11, 2018, while this action was pending. ECF No. 24-1. His spouse was substituted as the moving party, and the action continued forward. ECF No. 23. Any future use of the title Plaintiff refers to the decedent, Corey B.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the

claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On March 9, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from April 24, 2014 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 24, 2014, the alleged date of onset. Tr. 17.

At step two, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity; past-laminectomy syndrome with status post-surgery; obstructive sleep apnea; and major depressive disorder. Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of sedentary work with the following limitations:

> he is unable to climb ladders, ropes, or scaffolds; he is able to occasionally climb ramps and stairs as well as stoop, kneel, crouch, and crawl; he is limited to occasional exposure to vibration and occasional exposure to hazardous conditions (such as proximity to unprotected heights and moving machinery); and he is able to adapt to a predictable work routine in terms of assigned tasks and the procedures for accomplishing those tasks.

Tr. 19. The ALJ identified Plaintiff's past relevant work as mixing machine operator, industrial truck operator, materials handler, agricultural sorter, store

laborer, security guard, tractor-trailer truck driver, and fast food worker and found that he could not perform this past relevant work. Tr. 23.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of touch up screener, semiconductor die loader, and semiconductor wafer breaker. Tr. 24. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from April 24, 2014, through the date of the ALJ's decision. Tr. 24.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly address Listing 1.04 at step three, (2) failing to properly address the medical opinions in the file, and (3) failing to properly address Plaintiff's symptom statements.

**DISCUSSION[1]**

**1.    Step Three**

Plaintiff challenges the ALJ's step three determination arguing that the ALJ failed to address all the evidence and that he met or equaled Listing 1.04A or 1.04C. ECF No. 14 at 4-8.

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

A claimant is considered disabled at step three when his impairment meets the durational requirement and his impairments meet or equal a listing impairment in Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990); *Lewis*, 236 F.3d at 512.

Listing 1.04A requires that the following criteria be met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Listing 1.04C similarly requires the finding of "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," but it also requires "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.

Here, the ALJ's Listing 1.04 analysis consisted of two sentences: "The claimant does not have spinal stenosis, arachnoiditis, or nerve root compression following surgery in August 2014. See Exhibits 7F, 18F. He does not meet or equal listing 1.04." Tr. 18. Essentially, the ALJ found that Plaintiff failed to establish any disorder of the spine as of August 2014 and, therefore, did not address the remaining requirements of either Listing 1.04A or 1.04C.

A review of the medical evidence demonstrates that imaging directly following the surgery showed minimal findings. An MRI dated December 5, 2014 showed "very minimal central disc bulging" and "[f]acets only minimally prominent" at the L4-5 level. Tr. 478. At the L5-S1 level, the disc was symmetric and the "[f]acets moderaly prominent." *Id*. The Impression of the MRI states "[m]ild facet arthrosis." *Id*. Imaging taken on March 4, 2016 showed "[t]he lumbosacral spine is normal in alignment. There is good preservation of the disc spaces. The bodies, laminae, pedicles, and transverse processes all appear to be intact. The sacrum and sacroiliac joints show no abnormalities." Tr. 558. Plaintiff accurately points out that Vern Commet, DNP found that Plaintiff's obesity obscured his imaging. ECF No. 14 at 6 *citing* Tr. 516. However, Dr. Commet stated that Plaintiff's MRI showed no significant compression of the left L5 nerve root. Tr. 516. He also stated that "Plain films with flexion/extension technically are poor quality due to the fact the patient is morbidly obese. One cannot see the L4-L5 level. There does appear to be a listhesis at this level. L5-S1 is basically obscured." Tr. 516. Therefore, the poor quality was only in reference to the "Plain film," which is another term for x-ray. This is consistent with the x-rays performed on December 5, 2014 stating that "Imaging is limited due to patient's body habitus." Tr. 480.

Despite this minimal evidence on imaging in the months following surgery, Plaintiff points to subsequent imaging reports showing the required disorders of the spine from Listing 1.04. ECF No. 14 at 6-7. A CT Scan in August of 2016

showed "mild to moderate degenerative spondylosis of the spine, greatest at L4-L5 and L5-S1." Tr. 651. Additionally, there is an MRI from October 3, 2016 showing postsurgical changes including mild narrowing of the thecal sac at the L5-S1 level. Tr. 671. Therefore, the ALJ erred when he failed to address these later images in considering Listing 1.04.

The case is remanded for the ALJ to make a new step three determination regarding Listing 1.04. The ALJ will take into account all of Plaintiff's imaging reports for the entire period, including those months prior to the August 2014 surgery. The ALJ will call a medical expert to testify regarding whether or not Plaintiff's spinal impairments met or equaled a listing prior to and after his August 2014 surgery. In the event that Plaintiff met the listing prior to surgery, the ALJ will take testimony regarding recovery from the surgery to determine whether the durational requirement of step three was met. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

**2.     Medical Opinions**

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Wing Chau, M.D., Dave S. Atteberry, M.D., Vern Commet, DNP, Thomas Lally, D.C., and Gregory Sawyer, M.D., Ph.D. ECF No. 14 at 8-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

### A. Wing Chau, M.D.

On November 10, 2015, Dr. Chau completed an independent medical evaluation and opined that Plaintiff "is only capable of sedentary work at this point. He cannot tolerate any significant standing, walking or lifting/carrying activities. He needs to avoid any trunk twisting activities." Tr. 774.

The ALJ gave the opinion "significant weight" focusing on the limitation to sedentary work. Tr. 22. In doing so, it appears the ALJ failed to consider the opined preclusion from trunk twisting activities as these did not appear in the residual functional capacity determination, and the ALJ failed to discuss them elsewhere in the record. Tr. 19. This is an error. "The [residual functional capacity] assessment must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p.

Defendant's assertion that trunk twisting is "not vocationally relevant" and "vocationally insignificant" lacks merit. ECF No. 20 at 15-16. Issues of vocational relevance should be addressed by the vocational expert at the hearing. Upon remand, the ALJ will readdress Dr. Chau's opinion and present a complete hypothetical to the vocational expert.

### B. Dave Atteberry, M.D.

Dr. Atteberry was Plaintiff's treating neurosurgeon who provided evidence to the Washington Department of Labor and Industries regarding Plaintiff's functional abilities during the relevant time period. Tr. 343, 354. On January 28,

2015, Dr. Atteberry completed an Insurer Activity Prescription Form stating Plaintiff was not released to any work from January 28, 2015 to April 28, 2015 and providing an opinion regarding what the Plaintiff could do. Tr. 354. On July 16, 2015, Dr. Atteberry completed a second Activity Prescription Form that did not release Plaintiff to any work from July 16, 2015 to September 16, 2015 and also contained an opinion regarding his functional ability. Tr. 343.

The ALJ failed to address the opinions included on the Insurer Activity Prescription Forms in his decision. Tr. 22-23. This is an error. "The [residual functional capacity] assessment must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p.

Defendant asserts that the ALJ was not required to address these opinions because they were for short durations and did not qualify as probative evidence. ECF No. 20 at 18. Defendant goes so far as to assert that none of the Activity Prescription Forms completed by medical providers, including Dr. Commet and Dr. Lally, were required to be addressed by the ALJ because these all addressed periods of less than twelve months. *Id*. However, this is inconsistent with S.S.R. 96-8p, which requires the ALJ to consider and address all medical source opinions. Therefore, on remand, the ALJ will address all the Activity Prescription Forms in forming his residual functional capacity determination.

**C. Vern Commet, DNP**

As discussed above, Dr. Commet completed several Activity Prescription Forms for the Department of Labor and Industries providing his opinions regarding Plaintiff's functional abilities and whether or not he was released to work during the relevant time period. Tr. 342.

The ALJ did not address these opinions in his residual functional capacity determination. Tr. 22-23. However, the ALJ focused on a comment made in a

letter from Dr. Commet to Water's Edge Pain Management. Tr. 22. In an undated letter, Dr. Commet stated the following:

> Something that bothered me at one of his last office visits was the fact that Cory reported that he has applied for disability as he does not feel that he will ever be employable again. However, at this point I believe that that is too soon and certainly could be negative factor for him getting better. I would recommend psychological counseling along with his pain medicine therefore why we recommended to Corey that he be treated at a pain center.

Tr. 832. The ALJ focused on these statements in determining Plaintiff's residual functional capacity determination, giving them "signification weight." Tr. 22. However, the fact that the ALJ assigned weight to this statement, which addresses Plaintiff's treatment plan, and ignored the Activity Prescription Forms, which addresses Plaintiff's functional abilities, is concerning. On October 1, 2015, he stated Plaintiff had a poor prognosis for returning to work at the job of injury at any date. Tr. 344. On February 2, 2016, Dr. Commet did not release Plaintiff to any work from February 2, 2016 to May 2, 2016. Tr. 342. Upon remand, the ALJ is required to address these functional opinions in addition to the other statements Dr. Commet made throughout the record.

### D. Thomas Lally, D.C.

Dr. Lally completed several Activity Prescription Forms for the Department of Labor and Industries. Tr. 345-53. Again, the ALJ failed to address these forms in his residual functional capacity determination. Tr. 22-23. While Dr. Lally is a chiropractor and not an acceptable medical source, 20 C.F.R. §§ 404.1502, 416.902, his opinion must still be addressed by the ALJ, 20 C.F.R. §§ 404.1527(f), 416.927(f). Therefore, upon remand, the ALJ will address Dr. Lally's opinions in formulating his residual functional capacity determination.

### E. Gregory Sawyer, M.D., Ph.D.

On June 25, 2012, Dr. Sawyer completed a psychological consultative

examination. Tr. 550-56.  He diagnosed Plaintiff with "Major depressive disorder, recurrent, severe without psychotic features, currently under partial remission, apparently with medication." Tr. 555.  He opined that Plaintiff would have difficulty in the abilities to (1) sustain concentration and persist in work-related activity at a reasonable pace, stating that Plaintiff "has some trouble with his memory and concentration, particularly on the memory side and it is unlikely that he would be able to keep up a reasonable pace under those circumstances," (2) maintaining regular attendance in the workplace, stating that the claimant will have difficulty based on the level of his depression and his isolation, and (3) complete a normal workday or workweek without interruptions.  Tr. 556.

The ALJ gave "some weight" to the opinion.  Tr. 21.  However, the ALJ then assigned "no weight" to the opinion regarding maintaining a normal workday or workweek, and found that Plaintiff demonstrated good concentration and memory during the mental examination, and did not accept the notion that Plaintiff could not maintain regular attendance or complete a normal workday.  *Id*. Essentially the ALJ rejected all the limitations Dr. Sawyer opined.  Considering the ALJ has been instructed to readdress the other medical source opinions in the file, the ALJ will also readdress Dr. Sawyer's opinion on remand.

3. **Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable.  ECF No. 14 at 18-20.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p.  Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

**REMEDY**

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to make a new step three determination, address the medical source opinions in the file, and address Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding evidence and call a medical expert and a vocational expert to testify at a supplemental hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**, **in part**, and the matter is **REMANDED** for additional proceedings

consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 18, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE